UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

ROBERT GAINER,

       Plaintiff,

v.

                                       Case No. 1:10-cv-13579

2695341 CANADA LTD.,                      Hon. Thomas L. Ludington
d/b/a HICKORY DICKORY DECKS and
THOMAS JACQUES, jointly and severally,

       Defendants,

and

2695341 CANADA LTD.,
d/b/a HICKORY DICKORY DECKS

       Counter-Plaintiff and Third-Party Plaintiff,

v.

ROBERT GAINER and DECKStaordinaire, LLC,

       Counter-Defendant and Third-Party Defendants.
_____/

**OPINION AND ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT AND CANCELING HEARING**

Plaintiff Robert Gainer filed this action against Defendants 2695341 Canada Ltd. d/b/a

Hickory Dickory Decks ("HDD"), and Thomas Jacques ("Jacques") (collectively, "Defendants")

on September 8, 2010 alleging (1) violation of Michigan's Franchise Investment Law against HDD,

(2) fraud against HDD and Jacques, and (3) misrepresentation pertaining to Plaintiff's establishment

of a "Hickory Dickory Decks" design and installation of residential decks business against HDD and

Jacques. More specifically, Plaintiff alleges that HDD falsely represented that it was registered with

the State of Michigan, provided Plaintiff with false information regarding the profit that Plaintiff

would derive as a HDD franchisee, and falsely indicated that Plaintiff's Michigan franchise would benefit from advertising and goodwill associated with the "Hickory Dickory Decks" trade name. Plaintiff contends that he relied on these alleged misrepresentations to his detriment.

Defendants filed a motion for summary judgment on June 29, 2011. ECF No. 22. Defendants contend that Plaintiff has acknowledged that all of the alleged misrepresentations for which Plaintiff seeks damages under the three counts in the complaint occurred more than seven years before Plaintiff filed the complaint. Consequently, each of the alleged acts of fraud/misrepresentation is barred by the applicable Statute of Limitations: Count I – Violation of the Michigan Franchise Investment Act (4 years, per Mich. Comp. Laws § 445.1533); Count II – Fraud, (6 years, Mich. Comp. Laws §600.5813), and Count III – Misrepresentation (6 years, Mich. Comp. Laws § 600.5813). Additionally, Defendants contend that Plaintiff has not presented a genuine dispute as to any material fact to support his claims for fraud and misrepresentation.

Plaintiff responds that some of Defendants conduct was fraudulently concealed and that some of the wrongful acts were ongoing, resulting in some of the conduct falling within the applicable statutory period and that there are genuine issues of material fact with regard to all of his claims.

The Court has reviewed the parties' submissions and finds that the facts and the law have been sufficiently set forth in the motion papers. The Court concludes that oral argument will not aid in the disposition of the motion. Accordingly, it is **ORDERED** that the motion be decided on the papers submitted. E.D. Mich. LR 7.1(f)(2). For the reasons provided herein, Defendants' motion will be granted.

# I.    Facts

HDD, through Jacques, its principal, established its franchise business to design and install residential decks in Ontario, Canada in 1999. By 2002 HDD had sold its seventh franchise. All of the franchises were for territories located in Ontario, Canada. Presently, there are 53 HDD locations in Canada and the United States. Thirty-three of the locations are licensed to franchisees and twenty are company-owned businesses. None are in Michigan.

Plaintiff and Jacques had been close friends since early childhood when they met on the shores of Lake Huron during summer vacations. Plaintiff graduated from Central Michigan University with a business/marketing degree in 1984 and was employed in sales positions with several companies from 1985 through May 2003. In May 2003, Plaintiff's sales employment was terminated with West Publishing.

Approximately a year before his employment was terminated, Plaintiff sent Jacques a letter inquiring about the possibility of partnering with him or otherwise establishing a relationship with HDD to enable HDD to establish a presence in Michigan. In his February 22, 2002, letter to Jacques, Plaintiff suggested three alternative proposals. One proposal recommended HDD paying Plaintiff $7,500 for a "due diligence" report that Plaintiff would prepare setting forth the most viable locations in Michigan to establish HDD locations, the best marketing techniques to use, etc. Another proposal was to pay Plaintiff a flat $40/hour fee, excluding out-of-pocket expenses, to provide the "due diligence" report. The final proposal was for Plaintiff to provide HDD with the due diligence report in exchange for the first franchise in Michigan, preferably in Oakland County.  In the last paragraph of his letter, Plaintiff described his desire to become an HDD franchisee:

> In fact, if I were to get a franchise, my mandatory 'homework' to the carpenters, before I hired them, would be read those letters to understand the Hickory Dickory

> Deck organization. The key for me (and you), however, is to see how I can best fit into your organization and make it work. If one of the three [proposals] are acceptable to you, I believe we have reached the first stage of bringing your company to the United States.

ECF No. 22 Ex. 8 at 3. Plaintiff undertook a study and provided a due diligence report that was completed in March or April 2002 regarding the viability of operating a HDD franchise in Oakland County, Michigan, and was subsequently paid an unidentified fee for his services.

Shortly after Plaintiff's employment with West Publishing was terminated, he pursued an affiliation with HDD. At that time, HDD had eight franchises in Canada, but did not have a United States Franchise Offering Circular and was not registered to sell franchises in Michigan. It had not generated a Franchise Offering Circular, now called a Franchise Disclosure Document, to give to prospective franchisees in the United States because HDD chose to focus on franchising Ontario to capacity first. HDD had also concluded that it was not yet ready to spend the estimated necessary $50,000 to $100,000 in legal fees to generate a United States Franchise Disclosure Document. ECF No. 22 Ex. 4. Nonetheless, Jacques and Plaintiff decided to go forward with what HDD characterizes as an affiliation with HDD. Plaintiff characterized the relationship as that of a franchisor and a franchisee. The parties entered into an oral agreement making Plaintiff an HDD affiliate authorizing him to sell and construct HDD residential decks in Michigan. ECF No. 22 Ex. 2 at 61; Ex. 4 at 75. Per the oral agreement, Plaintiff was to pay HDD 6% royalties on all his HDD deck sales. Although HDD believed Plaintiff also had other obligations, including the obligation to pay joint advertising fees like those paid by HDD franchisees, Plaintiff did not agree, and did not pay HDD any joint advertising fees. In exchange for paying a royalty, Plaintiff was able to operate an HDD business, generating revenue and profits in accordance with his abilities to operate the

business.[1] Plaintiff acknowledged that their oral agreement did not require Plaintiff to maintain his business relationship with HDD for any specific duration and he could walk away from his affiliation with HDD at any time.

Plaintiff then formed Hickory Dickory Decks, LLC, and obtained a Michigan builder's license in February 2004. Plaintiff began generating revenue and paid royalties to HDD on his deck sales. He continued to make monthly royalty payments to HDD for nearly three years. Plaintiff's HDD deck-building business generated significant sales from February 2004 through November 2006, with sales of nearly $750,000, resulting in HDD being paid royalties of nearly $45,000.

At the time Plaintiff affiliated with HDD, HDD made its franchise business system manuals available to him on-line by giving him a password to access the manuals. In April 2005, Plaintiff signed a Confidentiality and Non-Disclosure Agreement ("NDA"), which he was required to sign in order to retain access to HDD's on-line manuals. Per the NDA, the manuals were proprietary to HDD and could only be used within Plaintiff's contractual relationship with HDD.

In January 2007, Plaintiff and Jacques met to discuss Plaintiff's future in the business. It was

---

[1] Plaintiff claims that Jacques told him in 2003 that we would make $1.3 million over 4 years as a HDD affiliate, based on a package Plaintiff claims Jacques offered him. ECF No. 24 at 27-29. Plaintiff says this package induced him into becoming a HDD affiliate, and that he accepted the package as evidenced by the fact that he went out on within 2 days after Jacques offered the package to try and sell his first HDD deck. He testified that his immediate act of going out to sell a deck is evidence that he accepted Jacques' alleged $1.3 million offer. *Id.* at 27-32. Plaintiff's "acceptance" of the alleged $1.3 million package offered to him is inconsistent with Plaintiff's subsequent email to Jacques wherein Plaintiff states "I would like nothing more at this point [than] to be a part of your exciting growth, and bring your business to the U.S." *Id.* at 32. In a later document drafted by Plaintiff for Jacques entitled "Negotiation Points for Hickory Dickory Decks," ECF No. 27 at 20-22, Plaintiff continues written negotiations with Jacques "requesting" $10,000 for each franchise he sells and "asking" for 2% of all Michigan franchise sales, among other topics being negotiated. ECF No. 24 at 35. Plaintiff's testimony at deposition that he accepted a package contract from Defendants is also inconsistent with the allegations of his Complaint, as there is no breach of contract claim. In any event, such a claim would be barred by Michigan's statute of frauds, Mich. Comp. Laws § 566.132(a), which requires that any contract that is to be performed over a period of more than 1 year be in writing, signed by "the party to be charged with the agreement," or the agreement is void as a matter of law.

agreed that Plaintiff would not have to pay for the past joint advertising fee for which he had been invoiced, but that he would pay the fee going forward.  There was also discussion about the HDD territory Plaintiff should have going forward, but the parties testified differently as to what territories were finally agreed upon. ECF No. 22 Ex. 1 at 177-78; Ex. 2 at 45.

In April 7, 2007, Plaintiff sent a letter to Jacques informing him that Plaintiff was terminating his relationship with HDD. ECF No. 22 Ex. 15; Ex. 2 at 339. HDD's on-line manuals and documents were accessed and downloaded the next day and again two days later using Plaintiff's HDD-assigned access code.  ECF No. 22 Ex. 16; Ex. 2 at 341-42, 345. Plaintiff denied that he downloaded the HDD materials after the date he terminated his relationship with HDD.

After Plaintiff left the HDD system in April 2007, he continued to operate his own deck design and construction business using the Hickory Dickory Decks trademark. Plaintiff subsequently started his own franchise system to license others to design and construct residential decks in 2009 under the name DECKStraodinaire. DECKStraodinaire provided franchise materials that Plaintiff alleges he created with his friend, Patti.

## II.    Standard of Review

A motion for summary judgment should be granted if the movant shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A party asserting that a fact cannot be proven or is genuinely disputed must support the assertion by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(B).  The party seeking summary judgment has the initial burden of informing the Court of the basis for its motion, and identifying where to look in the record for

-6-

relevant facts "which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the opposing party who must "set out specific facts showing a genuine issue for trial." Fed. R. Civ. Pro. 56(e)(2); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). If the opposing party fails to raise genuine issues of fact and the record indicates the moving party is entitled to judgment as a matter of law, the court shall grant summary judgment. *Anderson*, 477 U.S. at 250.

The court must view the evidence and draw all reasonable inferences in favor of the non-moving party and determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52. The party opposing the motion may not "rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact" but must make an affirmative showing with proper evidence in order to defeat the motion. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989). A party opposing a motion for summary judgment must designate specific facts in affidavits, depositions, or other factual material showing "evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252.

### III.   Discussion

### A.   Defendants' Statute of Limitations Challenge

### 1.   Count I

Under Michigan's Franchise Investment Act, Mich. Comp. Laws § 445.1533, "[a]n action shall not be maintained to enforce a civil or criminal liability created under this act unless brought before the expiration of 4 years after the act or transaction constituting the violation." Plaintiff filed his suit on September 8, 2010. As reflected in Plaintiff's responses to Defendants' first discovery

requests and supported by Plaintiff's deposition testimony, Defendants' alleged acts of fraudulent representations giving rise to the purported violations occurred between January 2002 and the summer of 2003. ECF No. 22 2-3 and Ex. 1 Nos. 12 and 15.  The relevant acts thus occurred seven years before this lawsuit was filed and more than 3 years beyond the applicable statute of limitations set forth in Michigan Compiles Laws §445.1533.

In Count I, Plaintiff specifically alleges that HDD violated the Michigan Franchise Investment Law, Mich. Comp. Laws § 445.1501, *et seq.*, because it:

> 12. . . . failed to provide Plaintiff with the requisite disclosure statements, notices and proposed Franchise Agreement, made untrue statements to Plaintiff and actively sought to defraud and deceive Plaintiff.

> 13. Specifically, HDD falsely presented that it was registered with the State of Michigan, provided Plaintiff with false information which is attached hereto as Exhibit 'A' regarding the profit that Plaintiff would derive as a HDD franchisee, and falsely indicated that Plaintiff's Michigan franchise would benefit from advertising and goodwill associated with the 'Hickory Dickory Decks' tradename."

ECF No. 1.  The false representation regarding registration purportedly occurred in July 2003.  ECF No. 22 Ex. 1 Nos. 12, 15; Ex. 2 at 166. Plaintiff testified that the alleged false representation referenced in Exhibit "A" attached to the Complaint was information Plaintiff received from Jacques in 2005 when Plaintiff complained to Jacques that he wasn't making enough money as an HDD franchisee.  Plaintiff alleges that, in response to Plaintiff's concerns, Jacques handed Exhibit A to the Complaint to Plaintiff—HDD's Franchise Opportunity information sheet—and told him that this is what Plaintiff should be making. Plaintiff testified he "didn't get this information . . . at the time that [he] made [his] commitment to Hickory Dickory Decks," but received it two years into his relationship with HDD. ECF No. 22 Ex. 2 at 138, 149. Defendants argue that because Plaintiff received the Franchise Opportunity information sheet after joining HDD in 2003,  Plaintiff did not

rely on the information contained therein in deciding to invest in HDD. Alternatively, Plaintiff alleges that he received HDD's Franchise Opportunity information sheet in 2005 which is still more than four years before Plaintiff filed the instant action and the four-year statute of limitations provided in Mich. Comp. Laws § 445.1533 had already run at the time the Complaint was filed.

Defendants also argue that Plaintiff did not identify his final alleged misrepresentation that his Michigan franchise would benefit from advertising and good will associated with the 'Hickory Dickory Decks' trade name and that claim is now waived. Defendants do not provide any legal authority for this contention. Plaintiff explained that this allegation was based on Jacques not advising Plaintiff that HDD was going to charge him for joint advertising fees, but acknowledged that he did benefit from using the HDD trade name. Defendants contend this acknowledgment reflects that there was no misrepresentation regarding benefits accruing when advertising the HDD name.

Defendants assert that each of the other alleged misrepresentations Plaintiff described in his responses to Defendants' first discovery requests were alleged to have occurred in or after January 2002, but in or before the summer of 2003. The allegedly fraudulent statements thus occurred no less than seven to eight years before this action was filed and well beyond the four-year statute of limitations period in Michigan Compiled Laws § 445.1533.

Plaintiff, however, contends that Defendants' statute of limitations argument only applies to wrong-doing beyond the applicable statutory period. Any allegedly wrongful acts that occurred within the statutory period thus remain viable even in the absence of fraudulent concealment. For example, Plaintiff contends that each "franchise fee" collected within the statutory period is a violation of the Michigan Franchise Investment Act as well as the Franchise Opportunity

information sheet containing viable fraudulent misrepresentations that were made within six years of the filing date.

Defendants reply that the Franchise Opportunity information sheet provided in 2005, which allegedly alerted Plaintiff to the existence of possible fraudulent misrepresentations that were made in 2003, is not evidence of a new fraud occurring in 2005 and is not a basis for asserting a fraud claim separate from the purported fraud in 2003. As previously noted, a claim of fraud accrues when the wrong was accomplished, and the law does not permit a plaintiff to use the date he claims he discovered, or should have discovered, a fraud as the date the fraud claim accrued. *Boyle*, 468 Mich. at 231-32. Indeed, Plaintiff's alleged fraud is based on representations he claims were made to induce him to *become* an HDD franchisee in 2003. Plaintiff's complaint does allege that he was injured by any allegedly fraudulent misrepresentations after he pursued becoming an HDD franchisee and Plaintiff does not otherwise explain how the Franchise Opportunity information sheet is a "new" fraud.

Moreover, Michigan's Franchise Investment Law does not grant statutory rights to recover each franchise fee collected during the statutory period, as Plaintiff suggests. The statute prohibits fraudulent and deceitful acts "in connection with the filing, offer, sale, or purchase of any franchise, directly or indirectly." Mich. Comp. Laws § 445.1505. The statute provides a private right of action to persons who have suffered an injury arising from the offer or sale of a franchise. Mich. Comp. Laws § 445.1531. The offer to join HDD was made and accepted by Plaintiff in 2003, and thus Plaintiff's cause of action under Michigan's Franchise Investment Law accrued at that time. The four year statute of limitations had run by the time Plaintiff filed this action. Mich. Comp. Laws § 445.1505.

-10-

### 2.   Count II

Count II, "Fraud Claim Against Hickory Dickory Decks and Thomas Jacques", alleges as follows:

> 18. Jacques wrongfully utilized the relationship of trust and confidence which existed between Plaintiff and Jacques to convince Plaintiff to become a HDD franchisee.
>
> 19. That Jacques made each of the representations set forth in Paragraph 13 above at a time when he was fully aware of the falsity of such representations.
>
> 20. Jacques intended for Plaintiff to act in reliance upon these representations and Plaintiff did in fact rely upon each of these representations.

ECF No. 1 ¶¶ 18-20. Defendants' first discovery request asked Plaintiff to "[i]dentify with specificity each and every alleged false representation referenced in Paragraph 13 of [Plaintiff's] Complaint." ECF No. 22 Ex. 1 No. 12.  In response, Plaintiff identified eight alleged acts, all of which purportedly occurred between January 2002 and the summer of 2003.

Under Michigan law, a claim of fraud accrues when the wrong was completed, and, in the case of common law fraud, a plaintiff has six years after the wrong was completed to file his complaint. *Boyle v. General Motors Corp.*, 468 Mich. 226, 232 (2003). The law does not permit a plaintiff to use the date he claims he discovered or should have discovered a fraud as the date the fraud claim accrued.  *Id.* at 231-32; *see also Estate of Lorimer v. Berrelez*, 331 F. Supp. 2d 585, 593 (E.D. Mich. 2004) (the limitations period for a fraudulent misrepresentation claim under Michigan law commences when the misrepresentation was perpetrated, and not when a plaintiff discovers or should have discovered the misrepresentation). In the instant case, the various allegations of fraud specifically alleged by Plaintiff that purportedly induced him to affiliate with HDD in 2003 are described in his responses to Defendants' first discovery requests.  These acts, by Plaintiff's own admission, occurred at least seven years and up to eight and a half years before Plaintiff filed his

action on September 8, 2010. Thus, Plaintiff's fraud claim is barred by Michigan's six year statute of limitations.  Mich. Comp. Laws § 600.5813.

### 3.   Count III

Count III is a Misrepresentation claim against Defendants HDD and Jacques, and alleges as follows:

24. The representations made by Defendants as set forth in Paragraph 13 were false.

25. Plaintiff was deceived by these misrepresentations.

26. Plaintiff relied upon these misrepresentations in becoming a HDD franchisee.

27. The loss which Plaintiff incurred in reliance upon these misrepresentations inured to the benefit of Defendants.

ECF No. 1 ¶¶ 24-27.  Where separate claims are made for misrepresentation and fraud, as in this case, the claims, together, have been treated as a "fraud claim." *See, e.g.*, *Huron Tool & Engineering Co. v. Precision Consulting Servs., Inc*, 209 Mich. App. 365, 368 (1995).  Here, Plaintiff relies on identical alleged intentional wrongful acts described in ¶ 13 of the Complaint as he relied upon in the other two Counts of the Complaint.  Further, Plaintiff incorporates all the paragraphs prior to the allegations in Count III, including allegations in ¶12 of the Complaint, which states in relevant part that Defendant HDD "actively sought to defraud and deceive Plaintiff." Thus, Count III is properly construed a claim of intentional misrepresentation. Claims of intentional misrepresentation are, like claims for fraud, subject to Michigan's six-year statute of limitations. *Romeo Investment Limited v. Mich. Consolidated Gas Co.*, No. 260320, 2007 WL 1264008, at *6 (Mich. Ct. App. May 1, 2007).

Plaintiff alleges he "relied upon the[] misrepresentations [alleged in Paragraph 13] to become a HDD franchisee." ECF No. 1 ¶ 26.  Plaintiff acknowledges he acted on Jacques purported offer

to affiliate with HDD in June 2003, ECF No. 22 Ex. 2 at 54-55, and "operated as a HDD franchisee from 2004-2006." ECF No. 1 ¶ 8. Defendants contend that any "misrepresentations" Plaintiff is referring to in Count III, must have been made prior to Plaintiff's commitment to join HDD in 2003. Plaintiff's responses to Defendants' first discovery request are consistent with Plaintiff's deposition testimony, reflecting that the purported misrepresentations occurred between January 2002 and the summer of 2003, at least seven years before Plaintiff filed his September 8, 2010 lawsuit. Consequently, Plaintiff's misrepresentation claim is barred by Michigan's six year statute of limitations. Mich. Comp. Laws § 600.5813.11.

### B.   Plaintiff's Allegation of Fraudulent Concealment in his Response

Plaintiff generally contends that under Michigan's Fraudulent Concealment Statute, Mich. Comp. Laws § 600.5855, the original fraud is regarded as a continuing affirmative act and Defendants' silence is treated as a concealment. *See Bufalino v. Mich. Bell. Tel. Co.*, 404 F.2d 1023, 1028 (6th Cir. 1968). If Defendants believed that Plaintiff was misinterpreting the promises he believed were made or the status of an HDD franchise in Michigan, it was their duty to make their position clear to Plaintiff. Because Defendants failed to do so, Plaintiff argues that they cannot now take advantage of this silence to invoke a statute of limitations defense. Plaintiff, however, has not pleaded a fraudulent concealment action and his reliance on Mich. Comp. Laws § 600.5855 is misplaced. *See Evans v. Pierson Enterprises, Inc*., 434 F.3d 839, 851 (6th Cir. 2006) (noting that the Federal Rules of Civil Procedure require that the acts constituting fraudulent concealment of a claim be pled in the complaint and outlining the three acts that must be pled to establish a claim for fraudulent concealment).

## IV.   Conclusion

Accordingly, it is **ORDERED** that Defendants' motion for summary judgment (ECF Nos. 22, 28) is **GRANTED**.

It is further **ORDERED** that Plaintiff's claims are **DISMISSED WITH PREJUDICE**.

s/Thomas L. Ludington
THOMAS L. LUDINGTON
United States District Judge

Dated: October 27, 2011

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on October 27, 2011

s/Tracy A. Jacobs
TRACY A. JACOBS

---